# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW CAMPBELL, for himself and all others similarly situated, | ) ) ) ) Civil Action No. 2:11-cv-00489 |
| Plaintiffs, | ) ) Judge Mark R. Hornak |
| v. | ) ) |
| VICTORY SECURITY AGENCY, L.P., | ) ) ) |
| Defendant. | ) ) |

| | |
|---|---|
| DORA SCHWARTZ, for herself and all others similarly situated, | ) ) ) ) Civil Action No. 2:11-cv-01267 |
| Plaintiffs | ) ) Judge Mark R. Hornak |
| v. | ) ) |
| VICTORY SECURITY AGENCY, INC., | ) ) ) |
| Defendant | ) ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

These actions are consolidated for pretrial proceedings and are brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 *et seq.*, against two companies, Victory Security, L.P. and Victory Security Inc.[1] The lead Plaintiffs are security guards who performed work for each company at various times, and now claim that they were not properly credited for

---

[1] Looming on the litigation horizon is *Thomas v. Victory Security Agency, L.P., et al.*, Civil Action No. 13-942. That case appears to overlap substantially with this case as to its FLSA claims and allegations, and it also seeks to assert claims under parallel provisions of Pennsylvania wage and hour law as a Fed. R. Civ. P. 23 class action. The Court at this point comes to no conclusion on how or whether that case can co-exist with these cases, or how that knot would be untangled. The Court would also note that Mr. Thomas is represented by counsel other than Plaintiffs' counsel in these cases. By an Order of this date, the Court is dismissing the Complaint in *Thomas*, but with leave to amend to provide the Plaintiff there with one (1) opportunity to flesh out his "joint employer" allegations. If that hurdle is cleared in *Thomas*, then all of this will have to be sorted out.

all hours they worked, and as a result, they were denied overtime compensation as required by the FLSA. Before the Court are their respective Motions for Conditional Certification and Authorization, (ECF No. 87 in 11-489; ECF No. 17 in 11-1267), for the issuance of Preliminary Notice to other potential "opt-in" participants as collective action Plaintiffs in this case. Those Motions have been fully briefed by all parties, are vigorously opposed by the respective Defendants, and are now ripe for disposition. For the reasons which follow, the Motion as to Victory Inc. will be granted on the terms set forth in this Memorandum Order because the Plaintiffs have rather easily met the bar set by the substantive rule of law for such conditional certification and preliminary notice. Disposition of the Motion as to Victory L.P. is a much closer call, but will likewise be granted.

The facts as to the general outline of the claims common to both cases are set forth in this Court's Opinion of September 28, 2012, ECF No. 70 in No. 11-489, *reported at* 2012 WL 4506566 (W.D. Pa. Sept. 28, 2012), and they will not be repeated at length. All parties to this action are represented by the same lawyers in each case, and they and the parties are well-familiar with the factual record. In the *Schwartz* Opinion,[2] this Court held that the Plaintiff Ms. Schwartz, had not provided sufficient factual support for such notice as to the Defendant Victory L.P. (notwithstanding the substantial record support she was able to provide as to Victory Inc. based on her work experience there). That Motion was denied, but without prejudice to its reassertion if and when further factual development and support was forthcoming. As explained in that Opinion, the problem was that compared to her work history with Victory, Inc., Ms. Schwartz's work experience at Victory L.P. was relatively sparse, arising from only three (3) assignments, and she had little or no personal knowledge of the work assignment and compensation issues as to any other employee working on a Victory L.P. assignment.

---

[2] Referred to hereafter as "*Schwartz*".

2

By the same token, the Court noted that she had plenty of first-hand knowledge about both her situation at Victory Inc. and that of others at that organization. Thus, this Court denied the Motion, but without prejudice to the Plaintiff taking another run at the issue, if she could advance sufficient evidentiary support as to the actual practices at Victory L.P. Thus, apparently as a result of that ruling, Plaintiff Campbell was added as a named Plaintiff in that action, further factual development of the record occurred, and the Motion was refiled in No. 11-489 as to Victory L.P. As to No. 11-1267, the Plaintiff has also filed a similar Motion based on the record now developed, and relying on factual support from both Ms. Schwartz and Mr. Campbell.

The Court set out the applicable legal standard in *Schwartz*, and more recently considered the standard applicable to the disposition of these Motions in *Stallard v. Fifth Third Bank, et al*, 12-cv-1092 (the rules did not change in the interim), and issued a Memorandum Order allowing for Conditional Collective Action certification and notice to potential opt-in participants on December 12, 2013. In that Order, the Court noted:

> In this Circuit, such conditional certification is governed by the two-tier approach set out in *Symczyk v. Genesis* HealthCare *Corp.*, 656 F. 3d 189 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1532 (2013); *see Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). In applying that test, this Court is to determine preliminarily whether the employees enumerated in the Amended Complaint, ECF No. 4, can be provisionally categorized as "similarly situated" to a named Plaintiff. *Moore v. PNC Bank, N.A.*, 2013 WL 2338251, at *2 (W.D. Pa. May 29, 2013) This showing is a "modest" one. *See Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418, at *3 (W.D. Pa. Nov. 5, 2013). The Plaintiff must then show, by the production of some evidence that goes beyond speculation, that there is a factual nexus between the manner in which the employer/Defendant's challenged policy or policies applies to the named Plaintiff(s) and those asserted to be similarly situated. *Id.* Where, as here, there has been some discovery aimed at these matters, arguably an incrementally higher standard applies, but it is not so substantially greater as to convert the question before the Court to one involving a dispositive merits resolution of the issues at hand.

3

*Id.*, ECF No. 77 (footnote omitted); *see also Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013); *Vargas v. General Nutrition Centers, Inc.*, No. 10-867, 2012 WL 3544733 (W.D. Pa., Aug. 16, 2012).

Of particular note is the analysis employed by Judge Fischer in *Hively*, namely that at this stage of the proceedings, the focus is not on a determination of the merits of the claims or defenses, or the resolution of factual disputes, but only on whether the plaintiffs have made a "modest factual showing" that the proposed plaintiffs are similarly situated, demonstrated by "some evidence", "beyond mere speculation", of a factual nexus between how the Defendants' policies affected the Plaintiff(s) and how it affected others in the same boat. *Id.* at *3.

The core of the Plaintiffs' Motions for Conditional Certification/Preliminary Notice in these cases is that supervisors of both Victory L.P. and Victory Inc. issued directives to these security guard Plaintiffs to arrive for work before their scheduled start time to garner a report from the guard that they were relieving, and to then, from time to time, stay after their scheduled shift's conclusion as necessary to cover for the relieving guard, and to make any necessary hand-off reports, all without accurately recording all time actually worked. They support their position with the testimony of Mr. Schwartz and Mr. Campbell that this was the practice that they were not only directed to follow, but in fact did follow, while employed by each of the Defendants. *Schwartz* at *1. Mr. Campbell and Ms. Schwartz testified that these conditions consistently applied as to the times that they were employed/assigned by Victory Inc., and in the case of both Ms. Schwartz and Mr. Campbell, that they in fact followed that practice when they worked under the auspices of Victory L.P.

The principal opposing arguments of both Defendants, who are represented by the same counsel in both actions, are along the following lines.

Defendants first contend that the record reveals that both Victory entities had written policies that required all employees to work only as scheduled, and to reflect on their timesheets all hours actually worked. It appears uncontested that this is what those policy documents do say, but that is not necessarily the issue under the FLSA, since a covered employer is obligated to "count" and then pay for (at the appropriate rate) all hours worked, even if such work is performed contrary to the employer's policy. Under the FLSA, an employer may not "suffer" work and not pay for it. See 29 C.F.R. §§ 785.11, 785.13.

In some measure, the whole point of the Plaintiffs' cases, as they plead them, is that no matter what the written policy says, the actual operational procedures, as defined by the expectations of the Plaintiffs' supervisors, was that Plaintiffs, and those in similar situations, were to ignore the rules and do as they were told. In the end, it may turn out that the Plaintiffs' situations were idiosyncratic to them, but now is not the time to make that call. That comes later in the process. Thus, while this "defense" may provide some shelter to the Defendants at the merits stage of the case, or may knock out one or more opt-in Plaintiffs if their individual facts demonstrate that they did not act contrary to the policies Defendants proffer and say were the actual "rules of the road" in real life, this argument is premature at this point.[3]

---

[3] Normally, this Court would not comment on record evidence submitted by a party that it did not consider, but it is the exception that demonstrates the rule. Victory L.P. submitted "declarations" of Jeffrey Brueckner, Sandra O.J. Welshans, Terrance Hamlett, Vincent Hughes, Francisco Deanda, Charles A. Millar, Jerome T. Moore, and Michael Dougherty. ECF No. 89-1 in 11-489 at 85-107. The Court has done the best it can with the spelling of the declarants' names, since neither the declarants nor Defendant's counsel typed or printed the names of the declarants in the heading of each declaration. The Court apologizes in advance to any declarant whose name is misstated.

The wording in these declarations is essentially identical (there appear to be two basic versions, one with twelve same-stated paragraphs, the other with fourteen). The only thing that the declarants appeared to do was print in their own name on the first line of the declaration, along with their first date of their employment in paragraph 2, followed by signing and dating the declaration at the end. Given these circumstances, which cast substantial doubt on the validity of the declarations and the actual personal knowledge of the declarants, the Court concludes that they are not at all helpful to its consideration of the Defendant's arguments (if even relevant, since the declarations really go to the merits stage of the case). In the same vein, the Defendant Victory Inc. levels the same charge as to declarations submitted by Plaintiffs from Mark Thomas and Mr. Campbell, ECF No. 33 in 11-1267 at 23-26.

The second defense erected by the Defendant Victory L.P. is that Campbell's deposition testimony was that while he acted contrary to the stated "Victory" policies when he was supposedly directed to do so by a Victory Inc. supervisor, Mr. Perry Hite, he (Campbell) admitted that he was never so directed by any supervisor on job sites that were staffed by guards working under the express auspices of Victory L.P. This argument has some facial merit, but not enough to preclude notice at this point. The issue here is that Campbell testified that *he* followed the same "work extra/don't write it down" approach on those Victory L.P. jobs, which could put Victory L.P. on the hook for such FLSA claims if they were aware of it and thereby "suffered" this work by Mr. Campbell. Recall that this was also Ms. Schwartz's testimony in *Schwartz*. Thus, neither Ms. Schwartz, nor Mr. Campbell, is necessarily a lone outlier. They have each testified under oath that while they were on Victory L.P. jobs, they did what they did while they were on Victory Inc. jobs, namely, worked as they understood they were expected to, and did not record all of their time worked. While two such witnesses is not exactly a groundswell, given the entire record before the Court, and the very modest showing required at this point, it is in the Court's estimation enough to move to the next step of the process.

This result is buttressed by the deposition and documentary record which reveals that employees such as the Plaintiffs here were routinely shuffled between the companies for assignments and work, and the record also reveals that the commonly-used employment policies for both entities provided that "Victory Security Agency is composed of two companies, Victory Security L.P., Victory Security Inc. under one umbrella".[4] This is telling for several reasons.

---

The Court would specifically caution all counsel that it takes seriously the obligation to proffer to the Court only evidence based on personal knowledge, in an admissible form. Submitting form declarations like these really pushes the edges of that envelope.

[4] ECF No. 37-1 at 5, 11-1267. Even defense counsel refers to the Defendants simply as "Victory". ECF No. 89 in 11-489 at 6, and plenty of times thereafter. The Court notes this not as a criticism, nor as a "gotcha", but simply to point out that the record and entity labels are not all that far apart.

First, there is no party in this case denominated simply as "Victory Security Agency" as such, but the nomenclature chosen to describe this overall operation would support an inference that from both the Defendants' perspective and that of employees, they were operated under a common hub ("one umbrella") with *ad hoc* job assignments coming from one spoke or another of that "Victory" umbrella as the circumstances dictated. Further, it would also appear to allow an inference that would square with both Ms. Schwartz's and Mr. Campbell's testimony, namely that she and he legitimately followed the directives received from the supervisor of one company (Victory Inc.) when they worked under the sub-"umbrella" of either enterprise. Therefore, while the merits-related issue of how many guards actually followed the same practices as described by Ms. Schwartz and Mr. Campbell may well come into play at the next stage of the case, it is not dispositive of the issue now before the Court. More importantly, this argument gives the required weight to the testimony of Ms. Schwartz as to her personal and observed work practices, as explained by the Court in *Schwartz*.

Next up to the defense plate (as to both entities) is the argument that because Campbell is now a supervisor, he cannot serve as Plaintiff any longer in either case as to a class/collection of front-line guards. From the Court's perspective, now that his testimony has demonstrated that Ms. Schwartz's situation was not, on the record, unique, his current status does not conclude this issue in Defendants' favor, since Ms. Schwartz is no longer flying solo as to the evidentiary record flowing from her own jobsite experiences.[5]

---

[5] What is pretty clear now is that if Mr. Campbell no longer has a valid FLSA claim, he cannot be the sole "champion" for the FLSA collective action as to the time in which he had not claims as a matter of law, as that was the central point of the Supreme Court's ruling in *Symczyk*. What is not so clear is that if Mr. Campbell did have valid FLSA claims prior to assuming supervisory status, he cannot serve in that capacity as to that timeframe.

Also, in their Second Amended Collective Action Complaint, the Plaintiffs misconstrue the core of the Court's analysis in *Schwartz*. Conditional certification was denied in that Opinion not because Ms. Schwartz's status as a "fill-in" at Victory L.P. somehow made her ill-suited as a matter of law to serve as a collective action lead Plaintiff,

7

This is followed by the argument that Mr. Campbell has not proffered the testimony of any other guard who can buttress his allegations as to Victory L.P. or Victory Inc. First, this ignores this Court's conclusion in *Schwartz* that Ms. Schwartz appeared to have plenty of personal knowledge, testimonial evidence as to the actual work practices at Victory Inc., *Schwartz* at *5. As to the Defendants' arguments that there will be, of necessity, "highly individualized" inquiries obviating the propriety of conditional certification as to either entity, this too may well be belied by the ultimate number of opt-in Plaintiffs. Or, if as Defendants contend, even when considered together Ms. Schwartz and Mr. Campbell are the odd situations, that would minimize the risk of individual issues overtaking collective issues. In any event, if it turns out that there was in fact a common workplace practice of setting the expectation that no matter what the written policies stated, guards were to, and did, work "off the clock", it would seem to the Court that the "individualized" component of that issue would be the individual calculation of damages, rather than an individualized assessment of liability.[6] Nonetheless, this is not the stage of the case for the resolution of that issue.

---

but because there was an insufficient factual record that anyone else followed the same worksite practices as she did or that she worked more than forty hours in any workweek while under the auspices of Victory L.P. *See Schwartz* at fn. 4. Now we have Mr. Campbell's testimony.

Is all of that overwhelming? No, but as noted at the beginning of this Opinion, it need not be at this point. What is in the record is the testimony of two employees, assigned to different Victory L.P. worksites, at different times, to the effect that their understanding was that they were expected to routinely work some meaningful amount of "off the clock" time while on those assignments. When this is coupled with the "one umbrella" self-identification of the overall Victory operation and the rather commonplace shuffling of guards between those entities, the record evidence advanced clears the low hurdle at this stage of the case, even if not by much.

[6] In this regard, the Defendants seem to take an approach laden with internal tension. On the one hand, they each make a big deal of their uniform, written policy that guards only work as scheduled and that they record the exact actual times that they work. They then, on the other hand, wave the "highly individualized issues" wand, pointing to varying "post orders" at each job site, a multiplicity of supervisors and actual varying client-driven work situations and the like to argue that individual issues will overtake any commonality. If the former is true, then the latter would seem to not matter at all. At this point, the Court need not sort out which may turn out to be the case, or to what degree. That is for the merits phase of the case.

As to the other defenses raised as to the relief sought as to Victory Inc. they too, fail at this stage for similar reasons. The guts of those defenses is that if any employee was directed to report early/stay late, it was not backed up with disciplinary action or threats, was sporadic, and because of the involvement of different job sites and schedules, the case would be rife with individualized analyses. As to the first issue, as noted above, an employer may nonetheless be liable under the FLSA if it permits work to be done and then does not count it as hours worked under the applicable FLSA regulations, regardless of whether the failure to work "off the books" was enforced by a threat of discipline. Second, the allegedly limited volume of such work may well go to the merits of assessing ultimate liability, of the ultimate "commonality" of specific situations, or even the number of opt-in Plaintiffs, but does not at this stage direct the Court's analysis. Finally, at this stage, the Court is unable to conclude as a matter of law that the "individualized analyses" asserted by Victory Inc. would so outweigh the potential application of common operating practices so as to make collective action treatment legally impermissible.[7] The Court may conclude that later, when and if there are more individual situations in the case to be considered, but it cannot so rule as a matter of law at this point.

As to the claims against Victory L.P., if considered alone, the claims advanced by Mr. Campbell would suffer from the same problems as to this entity as the Court identified in *Schwartz* as to Ms. Schwartz.[8] Mr. Campbell testified that the directive that he received to work extra time before and after shifts came from Mr. Perry Hite, a Victory Inc. supervisor, in

---

[7] In the same vein, the Defendants' argument that there is not a lot of support from other employees for the Plaintiffs' cases misses the point. At least one thing that will come of conditional certification/notice is the testing of that hypothesis, and if there are not many who seek to join, or whose claims have sufficient support to have legs, then the Defendants' prediction will have been vindicated. If the opposite turns out to be true, and there are a number of joining participants who turn out to have meritorious claims, then the Congressional policies embodied in the FLSA will have been vindicated.

[8] In this regard, the efforts of Plaintiffs' counsel in 11-489 to describe Mr. Campbell's experience with Victory L.P. as being "vast", ECF No. 88 at 15, or the evidentiary record submitted by him as "ample", *id.* really is a bit much.

connection with his one (1) assignment to a project staffed by Victory Inc. at the Tanger Outlet stores. The balance of the job sites at which he worked were each being handled by Victory L.P., namely at Engle Well, Franklin Lakeview, Independent Field, and Talisman Energy. Mr. Campbell did not testify that he was directed by anyone labelled as being a supervisor from Victory L.P. to work extra, "off the books" at any such Victory L.P. location, nor did he testify that he observed others regularly and routinely doing so. His testimony does support the conclusion that he kept "doing what he was doing" based on what Mr. Hite directed when he (Mr. Campbell) was working at the Tanger Outlet location.

Here, as was the case with Ms. Schwartz in *Schwartz*, Mr. Campbell's testimony, if considered alone, is not the sort of record evidence which would allow for the conclusion that as to the proposed class in Victory L.P., Mr. Campbell is likely similarly situated to its members. But, and it is a big "but", the record advanced on this point demonstrates that just like Ms. Schwartz in *Schwartz*, Mr. Campbell can speak with some authority as to what he did while at Victory Inc., (which meshes with Ms. Schwartz's testified-to experiences at that entity). What is also clear now is that at this point, neither he nor Ms. Schwartz stands alone, given their parallel testimony as to their own experiences with Victory L.P. On top of this are the business records of the "Victory" entities, in which they are self-described as being part of one "umbrella", coupled with the documentary and testimonial record that employees shuffle back and forth between them. All of that is enough to clear the rather low bar in place at this point.[9]

---

[9] Victory L.P. also "defends" on the basis that Mr. Campbell was "actively solicited" to be a named Plaintiff. ECF No. 89 in 11-489 at 25. First, there is no record evidence of any sort of "litigation abuse" by Plaintiffs' counsel in this regard, if that were the case. On top of that, this Court's Opinion in *Schwartz*, which granted the Plaintiffs leave to amend on the issue of collective action lead Plaintiff, pretty much foreshadowed the possibility of the Plaintiffs identifying another or different named Plaintiff, so they can hardly be faulted for looking for and finding one that they believed would fit the bill. Finally, it cannot be said from the Court's perspective that this case is necessarily a "frivolous fishing expedition", ECF No. 89 in 11-489, at 26. Defendants may turn out to have a winner on the merits, but the Court cannot conclude at this point that Plaintiffs necessarily have, and could have, "no case", the seeming prerequisite for a "frivolous fishing expedition" conclusion.

For each and all of the above stated reasons, the Plaintiffs' Motions for Conditional Collective Action Certification as to the classes asserted as to Victory Security, Inc. and Victory L.P. will be granted.[10] The parties are to meet and confer promptly, and submit to the Court within thirty (30) days of the date of this Opinion and Order a joint status report on the issue of content and scope of notice, along with a proposed Order for entry by the Court. The status report shall also note any specific areas of disagreement between the parties, and shall state, succinctly, the respective positions of each party as to any disputed point. Should there be any points of dispute, the Court will convene a conference of counsel, and will resolve each such point of disagreement.

Mark R. Hornak
United States District Judge

Dated: March 31, 2014
cc: All counsel of record

---

[10] A class (and subordinate sub-classes) of all Pennsylvania residents employed by Victory Security, Inc. as security guards from April 14, 2008 to present who were permitted or suffered to perform more than *de minimis* pre-shift and post shift work for the Defendant's benefit, but were not properly compensated for the work, as to Victory, Inc. (ECF No. 1 in 11-1267). The proposed class and sub-classes as to Victory, L.P. are described in a similar fashion with the only difference being the temporal limits being defined as "within" the applicable limitations period. (ECF No. 73 in 11-489).